BROCKENBROUGH, J.,
delivered the opinion of the Court:
(After stating the Case as above.) In answer to the first question propounded, the Court has no hesitation in saying, that according to the decision in M’Caul’s Case, 1 Virg. Cases, p. 300, if it does not appear from the record of the Examining Court, for what criminal fact the prisoner was examined and remanded for trial, and if that fact cannot be ascertained without looking to papers or testimony out of the record, and if from the record, it appears that he was ^'charged before the Examining Court, with felony generally, the Indictment charging him with a particular offence, ought to be quashed either on Plea, or on motion.
In that Case it was decided, that the Warrant of Commitment was no part of the record of the Examining Court. It is not necessary now to enquire, whether that part of the decision would, upon a re-consideration, be supported or not. There is nothing however in it, which sanctions the idea, that the prisoner himself may not make that Warrant a part of the record. In this Case, he moved the Examining Court to quash that Warrant and another, and the proceedings founded on them, and being over-ruled in this application, he excepted to the opinion and spread the Warrant of Commitment on the Bill of Exceptions, and prayed that his bill might be made a part of the record, which was done. It does then appear from the whole record of the Examining Court, that he was examined and remanded for trial, for the very offence for which he was indicted, and that the charge before that Court, was not too general.
The second question is of more importance. The Court is aware, that an opinion has lately prevailed, that a Mittimus, which does not shew on the face of it, that the charge against the prisoner was supported by oath or affirmation, is illegal, and that the prisoner may be discharged on Habeas Corpus. This opinion has received countenance from the Case of Ex parte Burford, 3 Cranch, 448. But after due reflection, we are satisfied, that in this State, the Eaw is otherwise.
The fourth article of the Constitution of the United States declares, that “The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no Warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” It appears clear to us, that this article applies to Search Warrants and Warrants of Arrest, and not to Warrants of Commitment. The article too, lays down a rule for the Federal authorities, and not for the State authorities. It was intended to afford security to the people of all the States, against the encroachments of their Federal Legislature, Executive and Judiciary, and of all the officers created by, or dependent on them. It could not be intended as a rule for the State authorities. The people of *the several States then existing, had already by their Constitutions and Laws, guarded themselves as effectually, as they thought it necessary, against the abuse of power by their own governments, and if there was any defect, they retained within themselves, the power to establish such additional rules as might thereafter be necessary.
By the the 10th article of their Bill of Rights, the people of Virginia declared, “That general Warrants, whereby an officer or messenger may be commanded to search suspected places, without evidence of a fact committed, or to seize any person or persons not named, or whose offence is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted.” There can be little doubt, that this article grew out of the discussions in England, in Wilkes’ Case, and it establishes a most important safeguard to the rights of the people, against the abuse of power by our own *344 State officers. But it is clear, that like the article in the Federal Constitution, it applies only to the Warrants of Search and of Seizure, and not to the Warrant of Commitment. This last Warrant was left as it stood at Common Law, nor has it been deemed necessary to make any Legislative enactment on the subject. How then stands the Case at Common Law? Hawkins, (Book 2, ch. 16, {! 17,) says, “It is safe to set forth, that the party is charged upon oath, but this is not necessary, for it hath been resolved, that a Commitment for Treason, or for suspicion of it, without setting forth any particular accusation or ground of the suspicion, is good.” This is supported by Wyndham’s Case, 1 Str. 3. Hale, (1 vol. p. 583,) cites the three essential parts of the Mittimus, as laid down by Lord Coke, and in that enumeration, does not include this requisition. See also, 1 Leach, 167; 1 Chitty Cr. Law, 110, and 2 Wils. 158.
It is believed, that it has been almost the universal practice of the Justices in this Commonwealth, to omit the statement in the Mittimus, that the party was charged on oath, and we have not heard, that any oppression has resulted from the practice. We do not, therefore, think it could be correct to make a new rule which might have the effect to let loose numerous offenders on the Community. In this opinion, JUDGE SEMPLE does not concur.
The third question is easily answered. The Law directs, that the Committing Magistrate shall issue his Warrant to the Sheriff, commanding him to summon at least *eight of the Justices to hold a Court for the examination of the fact. The Warrant in this Case, pursues the directions of the Law, and the Sheriff returns, that he has executed it. We consider the return as sufficient.
In answer to the fourth question, we say, that whether the Magistrate made a mistake in the date of the Warrant summoning the Justices, or in the recital that he had on that day, committed the prisoner, is wholly immaterial.
In answer to the fifth question, the Court is of opinion, that even if the Warrant of Commitment were bad in the particular al-readj' adverted to, it would be no ground to quash the Indictment, because the Indictment charges the prisoner with an offence for which he had been previously examined, and whether the original Mittimus was legal or not, yet, clearly, after he had been remanded to jail by the Examining Court, his second commitment was entirely regular. In this opinion we are unanimous, as we are that none of the other objections are sufficient to quash the Indictment.